# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 22, 2008

## STATE OF TENNESSEE v. MARCUS CONNER

### Appeal from the Circuit Court for Lincoln County
#### No. S0600135      Robert Crigler, Judge

---

### No. M2007-02514-CCA-R3-CD - Filed November 6, 2008

---

The Defendant, Marcus Conner, appeals from the sentencing decision of the Lincoln County Circuit Court.  In June 2007, the Defendant entered guilty pleas to three counts of selling .5 grams or more of cocaine, Class B felonies, and two counts of selling less than .5 grams of cocaine, Class C felonies.  Following a sentencing hearing, the trial court imposed an effective fourteen-year sentence as a Range I, standard offender and ordered the Defendant to serve his sentence in the Department of Correction.  On appeal, the Defendant argues that a sentence of community corrections was appropriate.  After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

Andrew Jackson Dearing, III, Assistant Public Defender, Shelbyville, Tennessee, for the appellant, Marcus Conner.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Charles Frank Crawford, Jr., District Attorney General; Hollyn Hewgley and Ann L. Filer, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

This case relates to the Defendant's guilty pleas and resulting sentences.  On November 21, 2006, a Lincoln County grand jury returned a twelve-count indictment against the Defendant relating to six different controlled sales or deliveries of cocaine with confidential informants.  The Defendant was charged with four counts of delivering .5 grams or more of cocaine (Class B felonies), four counts of selling .5 grams or more of cocaine (Class B felonies), two counts of delivering less than

.5 grams of cocaine (Class C felonies), and two counts of selling less than .5 grams of cocaine (Class C felonies). See Tenn. Code Ann. § 39-17-417(a), (c)(1).

On June 5, 2007, the Defendant pled guilty to three counts of selling .5 grams or more of cocaine and two counts of selling less than .5 grams of cocaine. The remaining charges were dismissed. Sentencing was left to the discretion of the trial court.

A sentencing hearing was held on September 18, 2007. The Seventeenth Judicial Drug & Violent Crime Task Force targeted the illegal distribution of cocaine in "the Bottoms" and "West End" areas of Fayetteville in Lincoln County. Assistant Director Timothy Miller testified that the sales involving the Defendant occurred in this area. He asserted that he was familiar with the "drug trade and culture" in the area and that he gained this familiarity by participating in a number of undercover, controlled drug purchases. Miller also supervised agents and confidential informants participating in controlled buys.

Miller opined that, based upon his experience, there was a "drug problem" in Fayetteville. Specifically, he stated that, given the hundreds of interviews he had conducted with addicts, crack cocaine was a "major" concern in the area. When asked how he would characterize the impact of the drug trade upon the small town of Fayetteville, he responded as follows:

> I have been here long enough I have conducted hundreds of interviews and arrests on cocaine in this area. A lot of those people we have taken federally. I have seen young people first come in contact with them and got information, either arrested them or caught them in crack houses, activities going on. I have seen those people go from having a fairly nice vehicle and wearing fairly nice clothes, having a house to live in to laying their head wherever they can get. No vehicle, no job, body weight structure totally gone. More or less were totally gone. We know we are involved in thefts and an assortment of crimes trying to get just enough money to get another hit of crack cocaine. A lot of these people, also especially females, I have seen willing to give their bodies up for just a piece or a hit of crack cocaine. It is pretty sad actually.

He confirmed that, in addition to the drug transactions themselves, there was a secondary level of crime associated with the drug trade. Finally, Assistant Director Miller saw a need for a deterrent effect on drug trafficking in Fayetteville.

Next, Carlton Dudley, a Community Corrections Officer employed with South Central Resource Agency, testified he was overseeing the public service work the Defendant was assigned to do as a condition of his bond, following his indictment on these charges. According to Dudley, the Defendant did not complete any of his service work; the Defendant called Dudley and explained that he could not do the work because "he didn't have a ride." Dudley had no further contact with the Defendant. As a result of his failure to do the work as ordered, the Defendant's bond was revoked.

The presentence report was admitted into evidence. The report reflected that the twenty-three-year-old Defendant had convictions for resisting arrest, evading arrest, simple possession of cocaine, domestic violence, and disorderly conduct. The report also listed that the Defendant had been adjudicated guilty four times of violating his probation. Moreover, it reflected that he was on probation at the time he committed the present offenses. The Defendant had no notable employment history. The trial court also took judicial notice of the fact that the Defendant failed to appear for a prior sentencing hearing.

At the conclusion of the sentencing hearing, the trial court imposed on the Defendant an effective fourteen-year sentence as a Range I, standard offender. The Defendant received sentences of eleven years for each of the Class B felony convictions and three years for each of the Class C felony convictions. One Class B felony conviction was run consecutively to one Class C felony conviction, and all other counts were to be served concurrently. Moreover, the trial court denied any form of alternative sentencing, determining that a sentence of total confinement was warranted. This appeal followed.

**ANALYSIS**

The Defendant challenges only that the trial court erred in failing to grant him a sentence of community corrections. He argues that a sentence of community corrections is appropriate because "[t]he crimes he committed were not of a violent nature and he is in need of job training."

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b);[1] State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts

---

[1] We note that the legislature has recently amended several provisions of the Criminal Sentencing Reform Act of 1989, said changes becoming effective June 7, 2005. See Tenn. Pub. Acts ch. 353, § 22. However, the Defendant's crimes in this case predate the effective date of these amendments. Therefore, this case is not affected by the 2005 amendments, and the statutes cited in this opinion are those that were in effect at the time the instant crimes were committed.

and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W. 2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

A defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6); see also State v. Fields, 40 S.W.3d 435, 440 (Tenn. 2001). The following considerations provide guidance regarding what constitutes "evidence to the contrary" which would rebut the presumption of alternative sentencing:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103(1); see also State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. See Tenn. Code Ann. § 40-35-103(2), (4). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. See id. § 40-35-103(5).

The Defendant was convicted of Class B and C felonies. Although a defendant is normally entitled to a presumption of being a favorable candidate for alternative sentencing options if convicted of a Class C felony, this presumption does not exist for the Defendant because he was also convicted of a Class B felony. Moreover, the Defendant has a criminal history evincing a clear disregard for the laws of society and a failure of past efforts at rehabilitation. See Tenn. Code Ann.

§ 40-35-103(1)(A), (C). However, he argues that he is eligible for placement in a community corrections program.

The Community Corrections Act was meant to provide an alternative means of punishment for "selected, nonviolent felony offenders . . . , thereby reserving secure confinement facilities for violent felony offenders." Tenn. Code Ann. § 40-36-103(1); see also State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001). Pursuant to statute, persons who satisfy all of the following minimum criteria are eligible for participation in a community corrections program:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;

> (B) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

> (C) Persons who are convicted of nonviolent felony offenses;

> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; [and]

> (F) Persons who do not demonstrate a pattern of committing violent offenses[.]

Tenn. Code Ann. § 40-36-106(a)(1). However, persons who are sentenced to incarceration or who are on escape at the time of consideration will not be eligible, even if they meet these criteria. See Tenn. Code Ann. § 40-36-106(a)(2).

Persons who do not otherwise satisfy the minimum criteria and who would usually be considered unfit for probation due to histories of chronic alcohol abuse, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community may be considered eligible for participation in a community corrections program. Tenn. Code Ann. § 40-36-106(c).

Even though an offender meets the requirements for eligibility, he or she is not automatically entitled to participation in a community corrections program. See State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998); State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). Rather, the Act provides that the criteria shall be interpreted as minimum standards to guide a trial court's determination of whether that offender is eligible for community corrections. See Tenn. Code Ann. § 40-36-106(d).

The Defendant appears to also argue that he is eligible for community corrections under the "special needs" provision of Tennessee Code Annotated section 40-36-106(c) because he has a history of drug and alcohol abuse. A defendant may rely on the special needs criteria for eligibility in a community based program, however, only if he or she does not qualify under subsection (a). State v. James R. Horn, Sr., No. M1999-00301-CCA-R3-CD, 2000 WL 680377, at *3 (Tenn. Crim. App., Nashville, May 25, 2000). Here, the Defendant is eligible for community corrections under subsection (a).

The trial court determined that the Defendant was unsuitable for placement in a program of community corrections, reasoning as follows:

> I am not going to grant community corrections on that because of the deterrent effect to the [D]efendant and others as stated in the record by Assistant Director Miller. Also that confinement is needed to avoid depreciating the seriousness of the offense and also less restrictive measures than confinement have both frequently and recently been applied unsuccessfully to the [D]efendant, that being the number of probation violations out of sessions court and the fact he was on probation when these offenses were committed.

The record supports the trial court's finding that the Defendant would be unlikely to comply with the requirements of a community corrections sentence. The presentence report indicates prior convictions for resisting arrest, evading arrest, simple possession of cocaine, domestic violence, and disorderly conduct. Furthermore, measures less restrictive than confinement have been repeatedly and unsuccessfully applied to the Defendant. The Defendant, who has no notable employment history, violated the terms of his release on four prior occasions and was on probation at the time he engaged in the present drug sales. The Defendant failed to appear for a prior sentencing hearing, and his bond was revoked for failing to complete his public service work. Assistant Director Miller testified that the sale of cocaine in the area was a "major" problem and that a deterrent effect was needed. Accordingly, we conclude that the trial court did not err by denying a sentence of community corrections. See State v. Lana Billings Henry, No. E2007-02649-CCA-R3-CD, 2008 WL 2894674, at *6 (Tenn. Crim. App., Knoxville, July 28, 2008); State v. Michael E. Bunting, No. E2005-00321-CCA-R3-CD, 2006 WL 1994573, at *6 (Tenn. Crim. App., Knoxville, July 18, 2006), perm. to appeal denied, (Tenn. Nov. 13, 2006).

## CONCLUSION

Based upon the foregoing, we conclude that the Lincoln County Circuit Court's decision denying the Defendant a sentence of community corrections was proper. The judgments are affirmed.

_____
DAVID H. WELLES, JUDGE

-6-